170 So.2d 740 (1964)
AETNA FINANCE COMPANY
v.
Rayford ADAMS.
No. 6253.
Court of Appeal of Louisiana, First Circuit.
December 21, 1964.
Rehearing Denied February 3, 1965.
Writ Refused March 12, 1965.
*741 Hebert, Glusman & Moss, by A. Leon Hebert, Baton Rouge, for appellant.
Watson, Blanche, Wilson, Posner & Thibaut, by Robert L. Roland and David W. Robinson, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
PER CURIAM.[*]
Plaintiffs, Aetna Finance Company (a foreign corporation, organized and existing under the laws of the state of Missouri, duly authorized to do and doing business in the State of Louisiana) and Aetna Finance Company of Baton Rouge, Incorporated, appealed from an adverse judgment in favor of defendant, Rayford Adams. The suit arises out of the voluntary breach by Adams of an alleged contract of employment between Aetna Finance Company of Baton Rouge and Rayford Adams.
The Plaintiffs sought a temporary restraining order and a preliminary and permanent injunction from participation by Defendant, directly or indirectly, with any finance corporation within a 25 mile radius of any of Plaintiffs' offices and sought $2,000.00 as liquidated damages stipulated in the contract for a violation thereof. By stipulation of counsel the temporary restraining order was dissolved without prejudice and Plaintiff in rule waived any claim for damages for attorneys' fees in connection with the temporary restraining order.
Defendant answered the suit on November 18, 1963, admitting employment with Aetna Finance Company beginning on March 10, 1958, admitting he signed a contract of employment on September 10, 1962 (which replaced a contract previously signed by Defendant) and admitting his employment was terminated at Aetna Finance Company on October 2, 1963, since which date he has been employed by Adams Finance Company, Incorporated, and otherwise denying the allegations of Plaintiffs' petition. He further answered:
"10.
"The contract sued on is void for lack of consideration and mutuality of consent, defendant having been in plaintiff's employ for several years preceding the date thereof and having been peremptorily *742 presented with the contract with the request to sign it without any recited consideration whatsoever.
"11.
"Further in the alternative, the contract sued on is void under the provisions of [LSA-]R.S. 23:921, not having been voluntarily executed by defendant within the meaning of said statute and not being supported by the considerations therein provided.
"12.
"Further in the alternative, the contract sued on is against the public policy of this State, in contravention thereof, and is hence null, void and unenforceable."
Following trial of the case, by stipulation of counsel, it was agreed the trial of the preliminary injunction would determine the merits on the permanent injunction. The Court, after taking the case under advisement, for written reasons assigned, rendered judgment holding lack of mutuality, lack of consideration and the non-competing clause in the contract invalid. The Court reasoned the two contracts were essentially the same and no additional consideration was given Plaintiff to sign the second and last contract and that the evidence failed to reflect training given to Defendant or advertising were of such nature as to give the contracting employee particular prominance as contemplated by Act 104 of 1962, amending LSA-R.S. 23:921. Therefore, said contract did not come within the exceptions allowed and the contract was therefore null and void.
A motion for a new trial was filed by Plaintiffs and thereafter the Trial Court affirmed its reasons for judgment, dismissing Plaintiffs' suit.
The evidence reflects Defendant submitted to Plaintiff his resignation dated October 1, 1963, requesting termination on October 15th and notifying Plaintiff he, Defendant, intended to go into a business for himself. Upon ascertaining, contrary to the agreement made in the contract hereinafter quoted, Defendant intended to go into competitive business for himself in Baton Rouge, Defendant's employment with Plaintiff was terminated October 2nd.
The testimony further reflects Rayford Adams was employed by Aetna Finance Company, a Missouri corporation, in New Orleans on March 10, 1958 as a field representative at a salary of $275.00 a month with a $75.00 car allowance. On August 29, 1960 he was made manager of the Baton Rouge office at which time he became an employee of Aetna Finance Company of Baton Rouge, Inc., a Louisiana corporation, at a salary of $425.00 per month. On September 10, 1962 he signed a contract of employment which was sent to him by Plaintiff requesting his examination thereof and advising him that because of recent legislation now effective in Louisiana the Company had determined new employment contracts should be entered into between the Company and all male personnel. He was advised, "If there is anything in the contract with which you do not wholeheartedly intend to comply, return the contract to me unsigned, stating your objections." Without making any objection, Defendant signed and returned the new contract of employment on September 10, 1962, which, among other things, contained:
"15. That for a period of one year after the termination of my employment for any reason I will not engage in any way, directly or indirectly, in any business competitive with the Employer's business, nor solicit or in any other way or manner work for or assist any competitive business, within a radius of 25 miles of any of Employer's offices in which I have been regularly employed for three months or more during the year prior to date of termination. If I was employed in more than one of Employer's offices during the year immediately preceding termination of my employment, the one *743 year restrictive period shall run from the date of last employment in the particular office concerned. * * *
"17. That if I shall violate any of the terms hereof, the injury resulting therefrom will be substantial but difficult of ascertainment; and I hereby agree that in the event of any such violation by me I will pay to the Employer the sum of Two Thousand dollars ($2,000) as liquidated damages therefor and not as a penalty, but it is hereby agreed that this provision for liquidated damages shall not reduce the right of Employer to or preclude Employer from equitable relief as outlined in paragraph 19 of this contract."
Defendant admitted immediately upon leaving Aetna on or about the 8th of October, he formed Adams Finance Company, Inc. in Baton Rouge with offices located eight blocks from those of Plaintiff's-Appellant's, of which he owns twenty percent of the stock. He began his advertising program by the 16th or 17th of October. On the trial he admitted that sixty percent of his business in the new corporation was with former borrowers from Aetna. Plaintiffs' witnesses admitted that no extra consideration as such was given Defendant on the signing of the new contract but related that upon his termination his salary had been increased to $565.00 a month. Testimony further revealed that Mr. Adams was undergoing training at all times, even though he was manager, constantly and continuously; that he was supervised directly by an officer of the company and that they furnished him with various manuals of operation and legal bulletins, which training was of expense to the company; that their advertising was of a general nature, both by mail and newspaper, and between the dates of October, 1962 and September 1963 amounts of money expended for advertising was shown to be substantial. The name of Defendant or his picture was not made part of the advertisement.
In letters from Defendant offered in evidence he acknowledged the supervisory visits and training given to him by Plaintiffs.
LSA-R.S. 23:921 provides:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then and in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2." (Italics ours.)
Counsel for Defendant maintains that the last contract executed by Defendant was not a new contract but was simply an effort on the part of Plaintiff to breathe into the old contract a binding covenant. As reflected in the letter by which the contract was transmitted originally to Defendant special attention was called to legislation, although not particularizing it, which required the execution of a new contract of employment. Witnesses for the Plaintiff conceded the sole purpose of executing the new contract was to enter into an agreement subsequent to the passage of the amendment of LSA-R.S. 23:921 by Act 104 of 1962 in *744 order to have a contract made subsequent to the passage so as to have a contract enforceable and valid. True, the two contracts were of similar importnevertheless the contract of employment entered into on September 10, 1962 is not an amendment of the old contract but embodies therein a new contract of employment with Plaintiffs therefore it is the contract of employment under which Defendant was employed at the time he left the employment of Plaintiffs. Counsel for Defendant maintains the contract was not voluntarily signed and that if Defendant had refused to sign same he would have been discharged. However, there is no evidence Plaintiffs in anywise threatened or intimidated Defendant so as to cause him to execute the contract. Therefore, we see no merit in this contention that he did not voluntarily execute the contract.
We are asked to set aside the contract insofar as the provisions of competing are concerned as being contrary to the public policy but where, as here, the legislature has itself spoken in clear and unambiguous language, the Court properly will not susbtitute its opinion of public policy for that which has been specifically expressed by the legislature.
In summary, Defendant, who was the recipient of training at the expense of his employer, voluntarily entered into a valid, bilateral commutative contract under which the Defendant, as part of the consideration of his employment by Plaintiffs and recompense to be derived therefrom in accordance with LSA-R.S. 23:921, voluntarily covenanted with his employer not to engage in any competing business for himself or as the employee of another competing business for one year after his termination of employment with Plaintiffs within a radius of 25 miles of Plaintiffs' offices.
In Martin-Parry Corporation v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83, the Supreme Court of this State made these observations we deem particularly appropriate to the issues herein involved:
"Article 1901 of the LSA-C.C. declares that agreements legally made have the effect of laws on those who have formed them and that they must be performed in good faith. This principle is repeated in Article 1945, (dealing with the interpretation of agreements) which states that the courts are bound to give legal effect to contracts according to the true intent of the parties when the words used are explicit and lead to no absurb (sic) consequences.
"Accordingly, as long as the object of the contract is lawful, it is the duty of the court to enforce it as written. In the case at bar, the stipulation of the defendant that he would refrain, after the termination of the contract, from capturing for his own account or for others the employees and dealers of the plaintiff was a perfectly lawful promise based on reasonable grounds and supported by valuable consideration, i. e., the salary and emoluments to be obtained in the position of Branch Manager."
Admittedly Defendant upon his termination of employment with Plaintiffs engaged in a competitive business, contrary to his covenant. Thus, Plaintiffs are entitled to the stipulated damages of $2,000.00 for such violation. More than one year has expired since the termination of employment by Defendant of his employment with Plaintiffs and, accordingly, the question of the issuance of an injunction becomes moot.
For these reasons the judgment of the Trial Court dismissing Plaintiffs' suit is reversed and judgment is rendered in favor of Aetna Finance Company and Aetna Finance Company of Baton Rouge, Inc. and against Defendant, Rayford Adams, in the full sum of $2,000.00, together with legal interest from date of judicial demand until paid, and all costs of Court.
Reversed and rendered.
NOTES
[*] This opinion was written by HERGET, J., now deceased and concurred in by the remaining members of the court, ELLIS, LOTTINGER, LANDRY and REID, JJ.