180 So.2d 85 (1965)
DELTA FINANCE COMPANY OF LOUISIANA, Inc., et al., Plaintiffs-Appellants,
v.
Glen D. GRAVES et al., Defendants-Appellees.
No. 10481.
Court of Appeal of Louisiana, Second Circuit.
November 15, 1965.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
Wilson, Abramson, Maroun & Kaplan, Donald R. Miller, Shreveport, for appellees.
Before GLADNEY, AYRES, and BOLIN, JJ.
GLADNEY, Judge.
This suit by Delta Finance Company of Louisiana, Inc. and Delta Loan Service of Shreveport, Inc., was filed November 25, *86 1964 against Glen D. Graves, Sales Financing Management, Inc. and Kenneth O. Arnold, President of Sales Financing Management, Inc., as a result of the alleged violation by Graves of an employment contract. Plaintiffs prayed for damages and injunctive relief. From a judgment rejecting plaintiffs' demands, this appeal has been lodged.
The defendant, Glen D. Graves, was employed by Delta Finance Company of Louisiana, Inc., on November 5, 1963 after serving for some time as assistant manager at Term Plan Finance Company of Shreveport. While serving as manager of Delta on May 20, 1964 Graves was requested and did sign an employment contract, certain provisions[1] of which are involved in this controversy. Later, on October 23, 1964, Graves' employment with the plaintiff was terminated and thereafter on November 9, 1964 he obtained employment with the defendant, Sales Financing Management, Inc. This company ran an advertisement in the local newspapers announcing the association of Graves with the defendant company and inviting all of his friends to continue to do business with him. The advertisement included a snapshot of the defendant, Graves, was paid for by the defendant, Sales, and was run with the knowledge and consent of Arnold. Graves sent form letters to old customers who had done business with him in which he advised them of his new association and invited them to do business with him. A number of these persons had been customers of Delta during the time Graves was employed by Delta, and some of these had current accounts with Delta at the time Graves solicited their business through the letters. Graves, while so employed with Sales, admittedly loaned to and paid off active accounts of customers of Delta. Plaintiffs have itemized their damages against the defendants, in solido, as: loss of profits on loans already paid off, $1,000.00, loss of profits on loans already solicited and which will be paid off, $5,000.00 and damage to reputation, $1,500.00, or a total of $7,500.00. Injunctive relief is sought against all defendants for a period of three years after October 23, 1964 prohibiting further solicitation of the active or paid out accounts of plaintiffs; prohibiting the making of any further loans to customers for the purpose of, or themselves directly, paying off or paying on the accounts of any active customers of plaintiffs; and prohibiting the publishing of the photograph of Graves or the use of his name in advertisements in conjunction with his employment by Sales Financing Management, Inc.
Following disposition of certain preliminary proceedings, Graves filed a plea of unconstitutionality and "violation of his civil rights," and all defendants filed exceptions *87 of no cause or right of action. The answer to plaintiffs' petition generally denied the allegations thereof, and Graves, although admitting that in the course and scope of his employment by Sales he did solicit customers, some of which were doing business with Delta, alleged that he did not by design actively solicit its customers. The defense primarily is based on the provisions of LSA-R.S. 23:921.[2]
The trial court, in denying the demands of plaintiffs, gave the following reasons, inter alia, for its ruling:
"While plaintiffs did prove on the trial of the case that defendant Graves, while employed by co-defendant Sales Financing Management, Inc., did violate some of the provisions of this alleged contract, particularly in making loans to and paying off some of the active customer accounts of Delta, and in publishing his photograph and name in advertising in conjunction with his employment by Sales Finance Management, Inc., the demands must be rejected, as plaintiffs failed to prove either that they incurred any expense in the training of Graves, or that they incurred any expense in advertising that Graves was the man to see about obtaining a loan from plaintiffs. See National Motor Club of Louisiana, Inc. v. Conque, La.App., 173 So.2d 238."
Although counsel for defendants have attacked this agreement made between Delta and Graves as wanting in consideration and as being potestative these contentions are without merit, and in our opinion were fully answered in Martin-Parry Corp. v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83 (1952). The defense, therefore, must stand or fall on the question of whether the provisions of the employment contract are prohibited by LSA-R.S. 23:921. Generally all employment agreements not to compete with the business of a former employer were declared null and unenforceable prior to the 1962 amendment. After the amendment the statute sanctioned such agreements only in cases where the employer had incurred an expense in the training of the employee or had incurred an expense in the advertisement of the business that the employer was engaged in.
We opine the trial judge erred in resting his decision upon National Motor Club of Louisiana, Inc. v. Conque, supra. This decision by our brethren of the Third Circuit held an agreement not to compete invalid by the provisions of LSA-R.S. 23:921 and public policy. Therein, the Court ruled that the employer had not incurred substantial training expense and advertisement expenses and such expenditures were for the benefit of the business and not for the employee; and that such contract could not be enforced against the former employee who engaged in similar employment and contacted former customers of the former employer. The contract provided that upon termination of his services the employee would not:
"* * * engage in the business of owning, operating, establishing, maintaining, working in, financing, being *88 a director, stockholder or consultant or in or by any other capacity or means engage in the business of operating a motor club or other similar type of touring service or operation in any way competitive to that of the Company for a period of five years from date of this agreement in the State of Louisiana." [173 So.2d 238, 240]
The decision of the case turned upon whether or not the money incurred by the employer in the training of the employee or in the advertisement of the business were substantial and sufficient to bring the employer within the scope of the 1962 amendment. The majority opinion of the Court noted that its decision conflicted with Aetna Finance Co. v. Adams, La.App., 170 So.2d 740, a decision of the First Circuit Court of Appeal. Two members of the Court dissented from the majority opinion and pointed out the Supreme Court, 247 La. 489, 172 So.2d 294, had refused writs in Aetna Finance Company v. Adams, assigning as reasons therefor that:
"On the facts found by the Court of Appeal, there is no error of law in its judgment." [172 So.2d 294]
By so amending LSA-R.S. 23:921 the legislature has removed the broad injunction against noncompeting contracts as being contrary to public policy. The statute as presently written gives approval to general noncompetitive contracts meeting the requirements of the 1962 amendment, and in so doing, places such agreements beyond condemnation of public policy. A fortiori, contractual provisions which merely restrict the employee's activity as to certain particulars of the employer's business should be respected.
In Martin-Parry Corp. v. New Orleans Fire Detection Service, supra, the Supreme Court re-examined the reasoning in Blanchard v. Haber, 166 La. 1014, 118 So. 117, the rationale of which was that such contracts were void as containing a potestative condition, and repudiated the holding, declaring:
"We are not in accord with the ruling. The agreement is a valid, bilateral commutative contract under which the defendant, as part of the consideration of his employment by plaintiff and the recompense to be derived therefrom, promised to desist from `enticing away', upon the termination of his employment and for two years thereafter, the other employees and dealers in the service of plaintiff.
"Article 1901 of the LSA-C.C. declares that agreements legally made have the effect of laws on those who have formed them and that they must be performed in good faith. This principle is repeated in Article 1945, (dealing with the interpretation of agreements) which states that the courts are bound to give legal effect to contracts according to the true intent of the parties when the words used are explicit and lead to no absurd consequences." [60 So.2d 83, 84]
The contract herein considered is distinguished from the contracts involved in National Motor Clubs of Louisiana, Inc. v. Conque and Aetna Finance Co. v. Adams, for in those cases the employees signed agreements not to engage in a competing business. The contract of which Graves complains does not prohibit his employment in a business competitive with the employer and thereby conflict with LSA-R.S. 23:921, but only enjoins him not to solicit any active or paid out customers of Delta; not to loan to, pay off or pay on any active customers' accounts of Delta; not to transmit or reveal information concerning the active accounts of, or method of operation or types of business forms of Delta to a competitor; and not to publish his photograph or allow it to be published in advertising in conjunction with similar employment. The effect of these provisions is to prohibit Graves from pirating or taking *89 direct steps to secure and injure the business of the former employer, Delta. It does not prevent him from utilizing his training or competing with other similar businesses.
The record is revealing as to the violation of these provisions by Graves. He readily admitted his activity in this respect when on the witness stand, and the trial court concluded that he had violated the provisions of the contract. The contract between Delta and Graves does not conflict with LSA-R.S. 23:921 and, the contract having been violated by Graves, the plaintiffs are entitled to relief.
The judgment of the trial court being predicated upon LSA-R.S. 23:921 did not adjudicate the question of damages. Plaintiffs tendered evidence indicative of their entitlement to an award of damages, but it is not sufficient for a definite finding. Therefore, the case will be remanded to afford the trial judge an opportunity to fix the quantum and should he deem it necessary, additional testimony may be required. However, the award of damages should go against Glen D. Graves and not against Sales Financing, Inc. and Kenneth O. Arnold. One not a party to a contract is not liable in damages to one of the parties to the contract for inducing the other party to breach the contract. Kline v. Eubanks, 109 La. 241, 33 So. 211, (1902); B. J. Wolf & Sons v. New Orleans Tailor-Made Pants Co., 113 La. 388, 37 So. 2, 67 L.R.A. 65, (1904); Moulin v. Monteleone, 165 La. 169, 115 So. 447, (1927); Hartman v. Greene, 193 La. 234, 190 So. 390, (1939); Cust v. Item Co., Limited, 200 La. 515, 8 So.2d 361 (1942); and Marine Forwarding & Shipping Co., Inc. v. Barone, La.App., 154 So.2d 528 (4th Cir.1963).
Plaintiffs are entitled to injunctive relief against all defendants enjoining any violation of the contractual provisions herein involved.
The judgment of the District Court is, therefore, annulled and set aside and the case remanded to the First Judicial District Court of Caddo Parish, Louisiana, to determine, after proper hearing, the amount of damages due plaintiffs from Glen D. Graves and for the further purpose of granting injunctive relief to plaintiffs against all defendants enforcing the provisions of the contract entered into between Delta Finance Company of Louisiana, Inc. and Glen D. Graves.
For these purposes the case is remanded for further proceedings consistent with this opinion.
Costs are assessed against the Defendants-appellees.
NOTES
[1] "2. It is agreed in the event of the termination of this employment by either party, with or without cause, that for a period of three (3) years after such termination, if Employee shall go into business alone or in conjunction with one or more others or in the employ of any person or legal entity, where the business of such employment shall be the same or similar to that of Company, except for another subsidiary of Century Acceptance Corporation:

"(1) Employee shall not solicit any active or paid out customers of Company.
"(2) Employee shall not loan to, pay off or pay on any active customer's accounts of Company.
"(3) Employee shall not transmit or reveal any information, written or oral concerning the active or paid out accounts of Company or method of operation or types of business forms of Company to a competitor or use same for himself or others in the same or similar employment.
"(4) Employee shall not publish his photograph or cause it to be published, or allow it to be published, or use his name in advertising in conjunction with such same or similar employment.
"* * *
"(6) This contract is entered into and shall be governed by the laws of the State of Missouri."
[2] "No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2." (Italicizied language added by the amending act.)