222 So.2d 517 (1969)
WORLD WIDE HEALTH STUDIOS, INC., et al., Plaintiffs-Appellants,
v.
John E. DESMOND, Defendant-Appellee.
No. 11198.
Court of Appeal of Louisiana, Second Circuit.
April 29, 1969.
Rehearing Denied May 27, 1969.
*518 Coen & Pliner, Shreveport, for appellants.
Mayer & Smith, Shreveport, for appellee.
Before GLADNEY, AYRES, and PRICE, JJ.
GLADNEY, Judge.
This action was insituted by plaintiffs against John E. Desmond alleging Desmond breached his employment contract containing provisions not to compete on the termination of his employment. Injunctive relief and stipulated liquidated damages are prayed for. The trial court dismissed the suit and plaintiffs have appealed.
Plaintiffs are the owners of several health spas located in various cities in Texas and Louisiana. In May 1967 plaintiffs' president, Paul Bernstein, contacted John E. Desmond, then living in Houston, Texas, and offered him a job as the manager of World Wide's health studio in Shreveport. The agreement provided Desmond would be a manager trainee and if worthy would become manager of the Shreveport studio. Desmond came to Shreveport, underwent several weeks training and thereafter became the acting manager of the studio. On November 27, 1967 Desmond and several other employees of World Wide attended a meeting at the office of Paul Bernstein in Beaumont, Texas. There Desmond and the other employees signed an employment contract containing a covenant not to compete. On the first of February, 1968, Desmond left the employment of World Wide and opened Intercontinental Health Studio in Minden, Louisiana, a city approximately forty miles from Shreveport. He also acquired a one-third interest in Mr. Lynn's Health and Beauty Spa located near World Wide's studio in Shreveport and became its manager.
It is asserted that in accordance with his employment contract the defendant agreed and obligated himself that he would not: (1) for a period of five years (or for the maximum period provided by law, whichever is less) from the date of his termination of plaintiffs' employment for any reason enter the employment of or become connected with any business within 100 miles of a county or parish in which a studio is located similar or of like nature to the business of plaintiffs; (2) engage in or become interested in as owner, advisor or otherwise in the health studio group or spa business; (3) hire or assist in hiring any employee who had worked for plaintiffs previous to or during the life of the contract; and not to induce in any way other employees of plaintiffs to sever their employment with plaintiffs.[1]
*519 In brief before this court appellants assign error to the judgment complained of: (1) in holding that the written contract voluntarily entered into between plaintiffs and defendant is a valid Texas contract but is rendered null and void in the State of Louisiana; (2) in holding that the written contract voluntarily entered into between plaintiffs and defendant is null and void because it is against the public policy of Louisiana; and (3) in rejecting all demands of plaintiffs herein.
The defense asserts that plaintiffs may not obtain the requested relief in the courts of Louisiana for such contractual provisions are not enforceable under LSA-R.S. 23:921, as amended by Acts 1962, No. 104, §§ 1, 2, which reads:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer or employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years." (Italicized language added by the amending act).
It is our conclusion that the contract must be governed by the law of Louisiana. At the time the contract was entered into Desmond was a resident of Shreveport and employed by plaintiffs at their studio located in Shreveport. Unquestionably it was contemplated that the provisions of the contract would have effect in Louisiana. As argued by the defendant the plaintiffs are seeking relief in the Louisiana courts as the result of the action of a Louisiana resident in this state.
The law to be applied for the recognition and enforcement of foreign law is found-in LSA-C.C. Art. 10 which merely states the rule of conflict of laws in a general sense. The pertinent portion of Art. 10 reads:
"Art. 10. The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
"But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect. * * *" *520 DeMary v. Fontenot, La.App., 161 So.2d 82 (3rd Cir. 1964) and Universal C.I.T. Credit Corporation v. Hulett, La.App., 151 So.2d 705 (3rd Cir. 1963). In DeMary v. Fontenot the court held that where a Texas agreement for the sale of race horses was to have effect in Louisiana and horse racing was legal in Louisiana, Louisiana courts would not refuse to enforce an agreement on the ground of illegality of horse racing in Texas. Universal C.I.T. Credit Corp. v. Hulett, supra, held that under stringent public policy provisions of the Louisiana Deficiency Judgment Act a mortgage creditor under an Indiana contract is barred from a deficiency judgment where he provokes the sale without benefit of appraisement. The contract showed on its face that the vehicle was sold to a Louisiana resident in order to be brought into Louisiana as a result of which the effects of the conditional sale and the subsequent repossession sale all must be governed by the law of Louisiana. The Louisiana rule recognizes that the law of the place where the contract is to have effect determines the rights and obligations of the parties.
Prior to his employment Desmond had never been in Shreveport. For a livelihood he had been a professional boxer for ten years and had worked at odd jobs in gymnasiums and certain health studios. It does not appear, however, that his job experience fully qualified him to operate plaintiffs' studio in Shreveport. He was employed as a trainee for the position of manager. In the contract which the employer signed it is stipulated:
"* * * These contacts are made by Employee working very closely with customer or member in regard to customer's or member's personal matter, such as physical fitness. Employee further states that the time he/she went to work for Employers, or for the health studios (centers, Spa's), he/she had little experience if any, in the practice of physical fitness and selling physical fitness to other persons, and that before either of said employments he/she was unacquainted in employers methods with people interested in physical fitness, and before he/she went to work for any of the health studios he/she had no customers who might have desired his/her services in physical fitness and before he/she went to work for Employers he/she knew nothing about Employers unique method of teaching, instructing and selling physical fitness, and of operating health studios (centers/Spa's.)"
The evidence discloses through the testimony of Paul Bernstein and Jerry Leva, officials of World Wide, that initially for a period of two weeks Desmond received intensive instruction from Bernstein in the Studio in Shreveport, and during recurring visits by Leva thereafter. The witnesses testified the defendant required continuous training thereafter which involved exercising and sales procedures adopted to their own methods and procedures. The employee was taught to handle personnel and sell their contracts to finance companies. Additionally, instruction was received from Don Burton and Frank Cessne. These facts were not categorically denied by Desmond.
World Wide advertised its studios in Shreveport and Bossier City regularly in the Shreveport Times and Journal spending over $5,000 during 1967 and a proportionate sum during that part of 1968 while defendant was its manager of the Shreveport Studio. Appellee argues the advertising benefitted only the company's business and was not for his benefit. Although Desmond's picture and name appeared in the papers only once, the purpose of the advertising was to secure customers whom he contacted as manager and upon leaving the employment the defendant had the opportunity of making these customers his own clients.
In commenting on the statute as affected by the 1962 amendment, this court said in Delta Finance Company of La., v. *521 Graves, La.App., 180 So.2d 85 (2nd Cir. 1965):
"By so amending LSA-R.S. 23:921 the legislature has removed the broad injunction against noncompeting contracts as being contrary to public policy. The statute as presently written gives approval to general noncompetitive contracts meeting the requirements of the 1962 amendment, and in so doing, places such agreements beyond condemnation of public policy. A fortiori, contractual provisions which merely restrict the employee's activity as to certain particulars of the employer's business should be respected.
"In Martin-Parry Corp. v. New Orleans Fire Detection Service, supra [221 La. 677, 60 So.2d 83], the Supreme Court reexamined the reasoning in Blanchard v. Haber, 166 La. 1014, 118 So. 117, the rationale of which was that such contracts were void as containing a postestative condition, and repudiated the holding, declaring:
`We are not in accord with the ruling. The agreement is a valid bilateral commutative contract under which the defendant, as part of the consideration of his employment by plaintiff and the recompense to be derived therefrom, promised to desist from "enticing away", upon the termination of his employment and for two years thereafter, the other employees and dealers in the service of plaintiff.
`Article 1901 of the LSA-C.C. declares that agreements legally made have the effect of laws on those who have formed them and that they must be performed in good faith. This principle is repeated in Article 1945, (dealing with the interpretation of agreements) which states that the courts are bound to give legal effect to contracts according to the true intent of the parties when the words used are explicit and lead to no absurd consequences.' [60 So.2d 83, 84]" [180 So.2d 85, 88]
The case of Aetna Finance Company v. Adams, La.App., 170 So.2d 740 (1st Cir. 1965 cert. den.) appears analogous to the instant case. The Supreme Court (247 La. 489, 172 So.2d 294) assigned as reasons for denying the writ "on the facts found by the Court of Appeal, there is no error of law in its judgment." In Aetna, as herein, the defendant had voluntarily executed a contract of employment with a finance company containing provisions not to compete on the termination of his employment. The court held that the evidence revealed Adams was undergoing training at all times, even though he was manager; that he was supervised directly by an officer of the company and that they furnished him with various manuals of operation and legal bulletins which training was of expense to the company; that their advertisement was of a general nature, both by mail and newspapers and between the dates of October, 1962 and September, 1963 amounts of money expended for advertising was shown to be substantial. The name of the defendant or his picture was not made a part of the advertisement. In awarding liquidated damages the court quoted with approval Martin-Parry Corp. v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83 (1952). It refused to substitute its opinion of public policy for that which had been specifically expressed by the Legislature. The unambiguous terms of the amendment declares to be permissible employment agreements "in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in." Further, such a voluntary contract and agreement is permitted provided the employee will not enter into the same business over the same route or in the same territory for a period of two years. Shortly after the decision in Aetna, the Third Circuit Court of Appeal handed down its opinion in National Motor Club of Louisiana, Inc. v. Conque, La.App., 173 So.2d 238 (3rd Cir. 1965). Therein the 1962 amendment was interpreted as intended *522 to protect the employer only where he had invested substantial sums in special training of employees or in advertising employees in connection with the business; and that sums spent by an employer advertising the business, as distinguished from advertising employees' connection with it, would not constitute expense in advertisement of the business and could not require enforcement of contracts not to compete on termination of the employment. The holding by the majority of the court that the contract involved was not permissible under LSA-R.S. 23:921 met with a strong dissent in which Judge Hood stated:
"The majority has held that a bilateral commutative contract under which the employee agrees not to engage in a competing business on the termination of the employment is not valid unless the employer has `invested substantial sums' in the training of the employee or in advertising the business. I do not believe such an interpretation of LSA-R.S. 23:921 is justified. The statute provides that that type of contract is valid if the employer `incurs an expense' for training or advertisement. I would agree that such a contract may be invalid if the expense incurred by the employer for training or advertisement is so insignificant as to constitute no expense at all. But in this case, and as shown in the majority opinion itself, more than negligible sums of money have been spent by the employer in training the defendant and in advertising the business.
* * * * * *
"The majority also has held that a noncompetitive contract such as the one at issue here is not valid unless the employer has invested substantial sums `in advertising the employee's connection with his business.' I can find no logical basis for such a holding. The statute provides that such a contract is valid if the employer `incurs an expense in the advertisement of the business that the employer is engaged in.' I think this means exactly what it says, and not the entirely different provision which the majority has read into the statute. As shown by the majority opinion itself, the employer has incurred an expense (a substantial expense I think) in advertising the business in which it is engaged, and that is all that is required in order for the contract to be valid under the statute. Actually, I think some of the advertising expense must be regarded as having been incurred to advertise Conque's connection with the business. * * *" [173 So.2d 238, 245, 246]
In order to distinguish the Conque case from Aetna or the instant case would require a fine distinction adjudicated upon its own peculiar facts. In the instant case we are of the opinion that the facts may not be easily distinguished from those found in Aetna and accordingly we prefer to follow the ruling in that case forasmuch as writs were refused by the Supreme Court.
In order to be entitled to injunctive relief a complainant must show irreparable injury. City of Lake Charles v. Lake Charles Ry., Light & Waterworks Co., 144 La. 217, 80 So. 260, 261 (1918).
In Beneficial Finance Company of Monroe v. Aldridge, La.App., 200 So.2d 681 (2nd Cir. 1967) it was held that an employer was only entitled to injunctive relief when compensation would not be adequate in damages, or where damages cannot be measured by a pecuniary standard, the court stating:
`* * * An irreparable injury is one for which the party injured cannot be compensated adequately in damages, or for which the damages cannot be measured by a pecuniary standard.'
"Moreover, it is provided in LSA-C.C.P. Art. 3601 that:
`An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.'" [200 So.2d 681, 683]
*523 The contract between World Wide and Desmond provided for a payment of $500 per month as liquidated damages. This suit was filed on May 27, 1968 following the termination of Desmond's employment on February 1, 1968. The circumstances reveal that Desmond severed his employment for the purpose of entering into competition contrary to his contract with World Wide. Therefore, it seems to us that the latter should be entitled to compensation from February 1 to May 27, 1968, a period of approximately four months, or $2,000.
For these reasons the judgment of the trial court dismissing plaintiffs' suit is reversed and judgment is rendered in favor of plaintiff, World Wide Health Studios and against the defendant, John E. Desmond, in the full sum of $2,000 with legal interest thereon from judicial demand and all costs of this suit.
Reversed and rendered.
NOTES
[1] The pertinent sections of the contract are as follows:

"NOW, THEREFORE, in consideration of the employment or continued employment by Employers of Employee and the further consideration of the fact that Employers have incurred and will incur incalculable costs and expense in continuing the development and training of Employee as an expert in physical fitness, which is agreed to and admitted to by Employee, and that Employers will suffer more or less irreparable damages if and when the employment ceases, Employee specifically undertakes and agrees that in the event of termination of his/her employment with Employers for any reason whatsoever, he/she will not, for a period of five (5) years from date of such termination (or for the maximum period provided by law, whichever is less) directly or indirectly enter the employ of or become interested or affiliated or connected, directly or indirectly, in any business within 100 miles of a county or parish in which a studio (spa) is located which is similar or of a like nature to the business of Employers, Employee further agrees that he/she will not either individually, separately, jointly or in association with others, establish, engage in or become interested in directly or indirectly, as Employee, owner, partner, stockholder, advisor, counselor or otherwise, in the health studio, club, center or Spa business within a period of five (5) years from the termination of this contract.
"Employee also agrees not to hire or assist in or influence the hiring of any other Employee of Employers if said Employee has worked for Employers either directly or indirectly, either previous to, or during the life of this contract, nor will Employee induce in any way any other employee of Employers to sever his/her employment with Employer."