236 So.2d 309 (1970)
NATIONAL SCHOOL STUDIOS, INC. and Eugene Guccione
v.
Henry C. BARRIOS, Jr.
No. 4019.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1970.
*310 Lenfant & Villere, Plauche F. Villere, Jr., New Orleans, for plaintiffs-appellees.
Raymond A. McGuire, New Orleans, for defendant-appellant.
Before REDMANN, BARNETTE and SWIFT, JJ.
BARNETTE, Judge.
Plaintiffs National School Studios, Inc., and Eugene Guccione brought suit against defendant, Henry C. Barrios, Jr., alleging a breach of a covenant not to compete in a contract entitled "Independent Dealer Contract" between plaintiffs National School Studios, Inc., as first party to the contract; Eugene Guccione, as second party to the contract; and defendant, Henry C. Barrios, Jr., designated as third party to the contract. In their petition plaintiffs sought an injunction to prohibit defendant from soliciting for a new employer customers of plaintiff National School Studios, Inc. In the alternative they prayed for damages. During the course of trial the alternative claim for damages was abandoned and plaintiffs stipulated that they only sought an injunction prohibiting the defendant from soliciting customers of plaintiff National School Studios, Inc., in the metropolitan New Orleans area, comprising the parishes of Orleans, Jefferson, and St. Bernard. After trial on the merits judgment was rendered in favor of plaintiffs granting a preliminary and permanent injunction against defendant:
"* * * [Restraining, prohibiting, and enjoining the defendant from in any way, directly or indirectly, soliciting for business for himself or anyone else any of the accounts which the said defendant, Henry C. Barrios, Jr. had at any time previously solicited for school pictures while in the employ of plaintiffs or any schools or accounts presently being serviced by plaintiffs, National School Studios, Inc., and Eugene Guccione in the metropolitan area of New Orleans, comprising the parishes of Orleans, Jefferson and St. Bernard.
"IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this injunction be effective for a period of two (2) years from November 6, 1968."
Defendant appeals from that judgment.
Plaintiff National School Studios, Inc., is engaged in the business of photographing school children at the various schools in the metropolitan New Orleans area. Salesmen and photographers are employed to promote National's business and to make photographs of school children after a contract has been agreed upon by the school and National.
In the spring of 1965, defendant entered into employment with National and was working under the supervision of plaintiff Guccione, who was in charge of the New Orleans area. In September, 1966, defendant entered into the "Independent Dealer Contract" with plaintiff National School Studios, Inc., designated as first party, plaintiff Eugene Guccione as second party, and defendant designated as third party. This contract provided in paragraph V, inter alia, that:
"The Third Party shall not, at any time, while this agreement is in force, and/or within thirty (30) months after its termination, within the territory assigned, either for himself or for any person, persons, firm or corporation, engage in, be associated with or employed by any person, firm or corporation or in any manner whotsoever enter into the territory herein defined, for the purpose of contracting or soliciting present and/or future customers of the First Party or attempt to obtain their patronage for a similar or competing business. Said Third Party shall not, in any manner whatsoever, directly or indirectly, solicit, divert, take away from or attempt to solicit, divert, or take away any of the customers, business or patronage of the First Party within said territory while the relationship of Third Party and First Party exists and for a period of thirty (30) months after terminating *311 same. If the said Third Party violates the provisions of this paragraph, he is to pay to the First Party the liquidated damages herein provided for."
In the fall of 1968, defendant terminated his employment with plaintiffs and began to work for a competing company. Shortly thereafter plaintiffs filed this suit alleging breach of the above-quoted provisions of the contract.
There is no dispute as to whether or not defendant solicited customers of National School Studios on behalf of his new employer; he admitted this during the course of trial. The issue before this court is whether or not the restrictive covenant of the contract is enforceable under the provisions of LSA-R.S. 23:921. That statute provides:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years." (Emphasis added.)
In his written reasons for judgment, the trial court judge stated:
"The Court is of the opinion that the evidence greatly preponderates to the effect that the defendant was given much specialized training as a salesman and photographer of school pictures before and after the contract was signed. There is absolutely no doubt as to the great amount of training given the defendant before the contract was signed and a good part of this training is admitted by the defendant. After the contract there was not as much training as before, but the employer did send salesmen down from the home office on three occasions to assist the defendant and Mr. Guccione with new methods of taking pictures, placement of persons in the picture and with handling of a display booth at the Louisiana Teachers' convention.
"The evidence also preponderates to the effect that the employer spent considerable money for this training which consisted of a large portion of defendant's salary, which he actually did not earn for several months, expenses involved in attending a week's training school in Minneapolis, Minnesota, and the time and expense of salesmen who came down to assist the defendant and Mr. Guccione as referred to hereinabove.
"In addition to the training given to the defendant, the evidence also greatly preponderates to the effect that the plaintiff spent considerable sums of mony in advertising of the business. According to the testimony of Mr. Guccione, plaintiff, himself, and also the representative of the other plaintiff, National School Studios, most of this advertising consisted of items which contained the name of plaintiff, National School Studios, and Guccione and Barrios (or Guccione or Barrios) such as five hundred appointment books each year, stationary, envelopes, business cards, name plates, pens and other promotional items. Mr. Guccione estimated that the company spent over six thousand dollars per year for advertising of this type. Mr. Barrios disputed some of the items and figures testified to by Mr.

*312 Guccione but he also admitted to many items and admitted that he had a name plate or die in his possession which he could have used to stamp his name on practically any promotional items that went out."
After a careful review of the testimony and evidence in the record we are in total agreement with the findings of fact of the trial court judge.
We are aware of the apparent conflict in the interpretation of LSA-R.S. 23:921 by our fellow members of the bench in the First, Second and Third Circuits as reflected by the opinions in Aetna Finance Company v. Adams, 170 So.2d 740 (La. App.1st Cir. 1964); National Motor Club of Louisiana, Inc. v. Conque, 173 So.2d 238 (La.App.3d Cir. 1965); Delta Finance Company of Louisiana v. Graves, 180 So. 2d 85 (La.App.2d Cir. 1965); and World Wide Health Studios, Inc. v. Desmond, 222 So.2d 517 (La.App.2d Cir. 1969).
In Aetna Finance Company v. Adams, supra; Delta Finance Company of Louisiana v. Graves, supra, and World Wide Health Studios, Inc. v. Desmond, supra, the First and Second Circuits have construed the amendment to LSA-R.S. 23:921 to mean that the legislature has removed the broad injunction against contracts not to engage in a competing business as being contrary to public policy, and has given limited approval to such contracts meeting the requirements of the 1962 amendment.
While each case must necessarily be decided on its particular facts, the First Circuit upheld the restrictive covenant in the Aetna case when it was shown that the employee was undergoing training at all times, even though he was a manager; that he was directly supervised by an officer of the company and that the company furnished him with various manuals of operation and legal bulletins which was an expense to the company; and that their advertisement was substantial, but of a general nature, the name of the employee or his picture was never made a part of the advertisement. The covenant was likewise upheld by the Second Circuit in the World Wide Health Studios case under almost an identical fact situation. However, the Third Circuit in National Motor Club of Louisiana, Inc. v. Conque, supra, held, with two judges dissenting, that noncompetitive covenants are against public policy and that they are authorized under the amendment only when the employer has "invested substantial sums" in the training of the employee or in advertising the employee's connection with the business rather than primarily advertising itself. In that case Judge Hood wrote a strong dissent which we interpret as expressing the view that the act as amended must be strictly construed and the investment in training and advertising need not be substantial, but that any such expense will suffice.
It is our opinion that the interpretation given by the First and Second Circuits more correctly reflects the true intent of the legislature in amending LSA-R.S. 23:921, but, even so, under the particular facts of this case it is clear that the contract can be upheld even under the "substantial" expense interpretation given to the act by the majority opinion in National Motor Club of Louisiana, Inc. v. Conque, supra.
Appellants argue before this court that even if an injunction is granted, it cannot be given in favor of plaintiff Guccione because the contract contains no provision by which Guccione, as second party, would have a right or cause of action against the third party, Barrios. But this is of no practical significance since an injunction in favor of either National or Guccione will equally benefit the other.
The contract provides:
"The Second Party has heretofore executed a Contract with the First Party and desires to obtain the assistance of the Third Party to aid in promoting and conducting the business of the First Party *313 in the territory assigned to the Second Party in his Contract,
* * * * * *
"The territory in which the Third Party shall engage in business as an independent dealer is limited to and defined as follows, to-wit: Within the Territory of Eugene Guccione as directed by Eugene Guccione."
It is also stipulated that defendant's salary was to be determined under a separate agreement between himself and Guccione. While it is true that the contract does not specifically state that defendant shall not solicit the customers of Guccione, the contract viewed in its entirety indicates its intent to protect both Guccione and National against violation by Barrios of the covenant not to engage in any competing business for a specified period following the termination of the employment.
The evidence supports the finding that the contract was terminated on November 6, 1968. Since the statute limits the period of the covenant not to engage in a competing business to two years from date of termination of the contract, the judgment so limiting its effect was correct. The contract providing for a 30-month period must be made to conform with the statute.
Following immediately the above-quoted portion of paragraph V of the contract, it continues as follows:
"In the event that this agreement is terminated for any reason, the First Party shall have the right to apply to any Court of competent jurisdiction to enjoin the said Third Party from continuing a breach of this contract, or the First Party shall have the alternative remedy of demanding the payment of damages, and it is agreed between the parties that the damages so sustained by the First Party are uncertain, speculative and difficult of ascertainment and that the parties, therefore, agree upon a method to determine the damages sustained by the First Party, and it is agreed that the amount so agreed upon is reasonable and shall be determined to be liquidated damages and not a penalty.
"In the event the Third Party violates the provisions of Paragraph V, he shall pay to the First Party, as liquidated damages, the sum of 9½¢ for each photograph taken of any of the customers within the assigned area during the term of thirty (30) months after the date of the termination of this contract. The Third Party shall make written monthly reports to the First Party of all such photographs taken and pay the agreed liquidated damages at the rate stated for the number of photographs taken during any calendar month on or before the 15th day of the following month. The claim for liquidated damages, if not paid, shall entitle the First Party to an accounting, and the First Party shall have the right to examine the books of the Third Party to determine the amount of liquidated damages."
The defendant argues that this agreement for "liquidated damages" adequately protects plaintiff against irreparable injury and injunction shall not issue, citing LSA-C.C.P. art. 3601 which provides in pertinent part:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law."
In Beneficial Finance Co. of Monroe v. Aldridge, 200 So.2d 681 (La.App.2d Cir. 1967), under a similar contract violation the court held that a stipulation of $2,000 as liquidated damages was in effect an admission that no irreparable injury would result and that the agreed sum would be sufficient to compensate for violation. It affirmed the judgment maintaining an exception of no cause of action as to the injunctive relief sought. In Minden Syrup Co. v. Applegate, 150 So. 421 (La.App.2d Cir. 1933), an injunction was denied because *314 the plaintiff had an adequate remedy in law for damages. In that case the court applied the definition of irreparable injury adopted by the Supreme Court in City of Lake Charles v. Lake Charles Ry., Light & Waterworks Co., 144 La. 217, 80 So. 260 (1918), namely: "An irreparable injury is one for which the party injured cannot be compensated adequately in damages, or for which the damages cannot be measured by a pecuniary standard."
In Pennington v. Drews, 209 La. 1, 24 So.2d 156 (1945), the Supreme Court made a distinction between a stipulated "penalty" and stipulated "damages" and held that an injunction would lie where the stipulation was one of penalty rather than of damage. In World Life Health Studios, Inc. v. Desmond, supra, the contract stipulated $500 per month liquidated damages. The suit was brought four months after termination and breach of the covenant and the court gave judgment for $2,000 but did not grant the injunction sought. In Aetna Finance Company v. Adams, supra, the plaintiff sought recovery of $2,000 "liquidated damages" and also an injunction. The court granted the $2,000 damages, but held the issue of injunction was moot because of the expiration of the contract period of one year. In Delta Finance Company of Louisiana v. Graves, supra, the court granted the injunction and remanded the case for trial of the issue of quantum of damages. The reported opinion does not indicate that the contract contained a stipulation of damages as in the World Wide, Aetna and Beneficial Finance Co. cases. It does not appear, however, that in Aetna and Delta the question was raised, as it was in Beneficial and World Wide and in this case urged by defendant, that an injunction shall not issue where there is an adequate remedy at law for damages.
In Solomon v. Diefenthal, 46 La. Ann. 897, 15 So. 183 (1894), a partner in a butcher shop acquired by purchase all of the interest of the other partner. The contract stipulated that the selling partner would not engage in a competing business in the City of New Orleans for five years and in event of his violation of the covenant the damage was liquidated by agreement at $5,000. The contract also stipulated that he could be restrained by injunction. There was a violation and the plaintiff sought damages and an injunction. The Supreme Court held that he was not entitled to both at the same time and that the injunction was properly dissolved. The Court said in that case:
"* * * They have themselves fixed upon $5,000 as being an amount sufficient to compensate plaintiff for a violation during the whole five years to which the contract refers. If damages had been liquidated in the contract as so much per day or per month, and plaintiff, at the end of two or three months, had sued defendant for the amount of the past-due and accrued and exigible damages, coupled with an injunction against further continued violation of his obligations, a very different case would have been presented to us than that which is actually before us. * * *" 15 So. at 186.
This is the kind of "very different case" the court must have had in mind. Here the so-called "liquidated damages" is not a fixed sum for total compensation but so much per photograph (9½¢). Assuming that plaintiffs could prove how many photographs were taken prior to a given date and thereby recover damages at 9½ cents per photograph to that date, it would appear from the above comment in the Solomon case that they would also be entitled to enjoin the further and continued violation. Apparently the plaintiffs have abandoned their alternative claim for damages and have limited this action to injunction only.
The stipulation of 9½ cents per photograph as "liquidated damages" does not in fact liquidate or determine the damage as was done by an agreed total lump sum in the Beneficial and Aetna Finance Company *315 cases, nor can the total sum be computed by a known or readily determinable factor as $500 per month in the World Wide case.
In this case 9½ cents is a stipulated formula for arriving at the amount of damage after the unknown has been determined. All evidence to prove the unknown would be so controlled by defendant that he could, by the simple expedient of not making the monthly report to the plaintiffs which the contract calls for or in not keeping records, make it extremely difficult, if not impossible, for plaintiffs to carry the burden of proof of the number of photographs taken during the period of prohibition. See 42 Am.Jur.2d, Injunctions, § 40 at pp. 779-780, which states in part as follows:
"It is difficult, if not impossible, to formulate a definition or rule that will be a sufficient guide in all cases in determining the existence of a legal remedy of such an adequate and complete character as will preclude relief by injunction. The matter must be determined from the facts and circumstances of each particular case. It is not enough that there is a remedy at law. The remedy, in order to preclude injunction, must be certain and reasonably prompt, and as practicable and efficient to the ends of justice and its administration, both in respect to the final relief and the mode of obtaining it, as an injunction would be. * * *
"* * * The mere existence, however, of an action at law for damages, does not prevent recourse to equity for injunctive relief. If for any reason such action is inadequate to furnish the complainant the full and complete relief and protection to which he is entitled, it will not preclude injunction, as where it would be extremely difficult or impossible to ascertain the amount of compensation. * * *"
We therefore hold that the plaintiffs do not have an adequate remedy at law for damages and that the acts of defendant in violation of the contract are such as would reasonably result in irreparable injury to the plaintiffs. This is not to be construed, however, as a denial to the plaintiffs, or to other parties to like contracts, of the right to seek damages in proper cases, however difficult the proof may be, in lieu of or in addition to injunctive relief.
For these reasons the judgment appealed is affirmed at appellant's cost.
Affirmed.
REDMANN, Judge (dissenting).
If any small expense in training an employee or advertising the employer's business will support a no-competition clause in an employment agreement, then the entirety of LSA-R.S. 23:921 is repealed by an Act (No. 104 of 1962) which purported only to amend it. It could no longer be said, as that statute recites, that no employer may require a no-competition clause; to the contrary, the law would have become that every employer could require and enforce such a clause.
The more reasonable interpretation of the amendment, in my opinion, is that of National Motor Club of La., Inc. v. Conque, 173 So.2d 238 (La.App.1965): normal costs of doing business in ordinary training of new employees and in advertising the business will not bring an employer within the 1962 amendment.
Furthermore, here the principal costs of training defendant were expended prior to the contract sued on.
The judgment appealed from should be reversed.