**NALCO CHEMICAL COMPANY,**
Plaintiff,

v.

**Merwin G. HALL, Defendant.**
**Civ. A. No. 15142, Division "B".**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 20, 1965.

As Corrected Feb. 2, 1965.

Ralph L. Kaskell, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., John C. Snodgrass, Vinson, Elkins, Weems & Searls, Houston, Tex., Andrew O. Jaros, Chicago, Ill., for plaintiff.

Cicero C. Sessions, E. Gordon Schaefer, Jr., Sessions, Fishman, Rosenson & Snellings, New Orleans, La., for defendant.

WEST, District Judge.

This matter, assigned to Division "B" of this Court, and in the absence of the Judge of that Division, came on for hearing in Division "C" on petitioner's application for the issuance of a preliminary injunction. After hearing the evidence and the arguments of counsel, the Court denied petitioner's application for a preliminary injunction, and in connection therewith, pursuant to Rule 52 of the Federal Rules of Civil Procedure, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Respondent, Merwin G. Hall, entered into a written employment contract with plaintiff, Nalco Chemical Company, then Visco Products Company, Inc., now a division of Nalco, on November 5, 1957. Among other things, this contract provided that respondent would not engage in or be interested in the same or any similar line of business in competition with plaintiff within the district of southeast Louisiana, composed of all parishes south and southeast of the Red River, except DeSoto and Natchitoches, and excluding all parishes north of the Red River, for a period of three years immediately following his termination of employment with plaintiff.

2. Respondent worked for plaintiff continually, except for a period or about four months in 1952, from 1946 until November 24, 1964.

3. Respondent was notified by plaintiff in October of 1964 that he was being transferred from Louisiana to Mississippi, and rather than accept such a transfer, he resigned from his job on November 24, 1964. There is no question

in the Court's mind but that this contemplated transfer of respondent from Louisiana to Mississippi was intended by the company to be a demotion.

4. Immediately upon resigning from his employment with plaintiff, respondent went to work for Aquaness Corporation, a wholly owned subsidiary of Milchem Corporation, and a major competitor of plaintiff.

5. Plaintiff seeks to enjoin respondent from continuing in his employment with Milchem and/or Aquaness in the territory covered by the prohibition contained in the employment contract, and further seeks to enjoin respondent from using plaintiff's customer lists, location lists, technical reports and analyses—all on the ground that these activities are forbidden by the terms of the employment contract of November 5, 1957.

6. The employment contract was entered into in Texas, to be performed in Louisiana, and by agreement of counsel, it was stipulated that the law of Louisiana is to be applied in interpreting the contract.

7. At the time of this hearing, respondent had delivered to or turned over to plaintiff all customer lists, location lists, reports, and analyses belonging to plaintiff and which had previously been in respondent's possession, and respondent retained none of these materials, nor did he have access to any of these materials at the time of this hearing, except, of course, as to such information as he logically would have remembered as a result of his employment with petitioner.

8. When respondent left petitioner's employ, five or six of petitioner's other salesmen left also and were, along with respondent, employed as salesmen in the same territory by Aquaness Corporation. The Court has no doubt but that respondent was either directly or indirectly responsible for these salesmen leaving petitioner's employ and going to work for Aquaness.

9. Petitioner was, temporarily at least, put at a competitive disadvantage by the loss of the services of respondent and the other salesmen all at the same time, and in all probability, this disadvantage to plaintiff inured, temporarily at least, to the benefit of Aquaness.

10. The evidence fails to establish that petitioner incurred any expense, as contemplated by LSA–R.S. 23:921, and certainly no unusual or significant expense in training respondent for his work with petitioner. Petitioner failed to carry the burden of proving by a preponderance of evidence that any expense for training respondent was incurred by petitioner in this case that would not have been incurred by any and every employer who has employed a new employee of any kind. The evidence furthermore failed to establish that petitioner has expended any sums whatsoever in advertising the fact that this respondent was employed in petitioner's business. There was, of course, evidence that petitioner spent money in the usual, normal, everyday advertising of its business and products, but such advertising had nothing to do with respondent's employment by petitioner.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter under its diversity jurisdiction.

2. Title 23, Section 921 of Louisiana Revised Statutes, as amended through 1962, provides as follows:

"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to

enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2."

3. While this Court cannot find, and neither counsel could present, any state court decisions interpreting the exceptions contained in the statute hereinabove quoted pertaining to the employer expending money for training an employee, or money to advertise, nevertheless, this Court believes that the intent of these exceptions is obvious. These exceptions are obviously designed to allow an employment contract to contain a limited provision not to compete if the employer has expended money for training an employee not usually or customarily expended in the normal type employment. In other words, it seems quite clear that the intent of this exception is to protect an employer, to a limited extent, in cases where the employer has furnished and paid for special training whereby the employee is, by virtue of such expenditure by the employer, made a specialist in the employer's employ. The exception is not intended to cover the usual and customary expenses incurred in acquainting a new employee with his duties.

4. As to the exception contained in the statute pertaining to expenses of advertising, this Court also believes that the intent is clear. It seems obvious that such expenses of advertising, in order to fall within the exception contained in the statute, must necessarily pertain in some way at least to the employee's connection with the employer's business. Where the expense of advertising is limited to the normal advertising of the employer's

business and products, without any reference to the employee's connection therewith, it is difficult indeed to see how the exception in the statute could apply. If the Court were to hold that any expenses incurred in training an employee, and any expenses incurred in advertising the business, even though such advertising expenses had no reference to the employee's connection with the business, would bring the case within the exceptions contained in the statute, then the Court would, in effect, be reading out of the statute all but the exceptions. This is necessarily true because it is almost impossible to conceive of a situation where a new employee is not, at first, an expense to the employer, and it is equally difficult to conceive of a business today that does not incur some expense of advertising.

5. Thus, in order to give effect to the exceptions contained in the statute, while at the same time upholding the public policy expressed therein, it must be concluded that the exception pertaining to expenses incurred in training the employee pertains only to those unusual expenses over and above the usual and ordinary expenses thus incurred, and the exception pertaining to expenses incurred in advertising pertains to such advertising as in some significant way connects the employee with the employer's business.

6. It is concluded, therefore, as a matter of law, that the exceptions contained in LSA–R.S. 23:921 are not applicable to this case, and that the no competition clause of the employment contract here involved is contrary to the public policy of the State of Louisiana by the express provision of LSA–R.S. 23:921 and is thus null, void, and unenforceable.

For these reasons, the temporary injunction sought herein by petitioner must be denied.