**WHEELABRATOR CORPORATION**

v.

**James W. FOGLE and Southern Steel Shot, Inc.**

**Civ. A. No. 15360.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Aug. 27, 1970.

---

John T. Guyton, Thomas J. Wyatt, Hargrove, Guyton, Van Hook & Ramey, Shreveport, La., Richard Roob, Palmer & Serles, New York City, for plaintiff.

Pike Hall, Jr., Wilkinson, Woods, Carmody & Hall, Shreveport, La., Thomas J. Macpeak, Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., for defendants.

OPINION

DAWKINS, Chief Judge.

In this diversity action Wheelabrator Corporation ("Wheelabrator"), a Delaware corporation with its principal place of business in Indiana, seeks injunctive relief against James W. Fogle, a domiciliary of Caddo Parish, Louisiana, and

Southern Steel Shot, Inc., a Louisiana corporation not yet actually doing business.

Plaintiff primarily seeks to restrain Fogle, a former employee, from using or disclosing what it alleges are trade secrets and confidential processes. Plaintiff also seeks to restrain Fogle from violating the non-competition clause of his employment contract [1] which provided that Fogle would not work for a competitor for one year after leaving Wheelabrator. The one-year period ended June 1, 1970, so that question is now moot. It would serve no purpose for this Court to interpret and apply Louisiana law, as it must, to this moot question especially in light of the limited and less than well-settled jurisprudence.[2]

The sole question that remains [3] therefore is whether Wheelabrator is entitled to injunctive relief against Fogle and the defendant corporation restraining the disclosure and/or use of Wheelabrator's alleged trade secrets.

Wheelabrator is a large corporation with its principal plant and manufacturing facilities located in Mishawaka, Indiana. The company manufactures steel shot and grit and the blast cleaning machines in which these abrasives are used. Wheelabrator has been in the business of manufacturing blast cleaning machines for about fifty years, formerly marketing a chilled iron shot for use in the machines. In 1952, it began production of steel shot and now has about a 35 per cent share of the market in the United States. Wheelabrator also has licensees or affiliates in England, France, and Japan and is planning another in India.

Fogle is a forty-seven year old, largely self-educated engineer with undisputed keen mechanical ability. He began working part-time when he was ten years old and later left high school to work full-time due to his family's financial condition. He entered the Navy in 1940 and achieved the grade of Chief Torpedoman. In the interim between his discharge from the Navy in 1948 and his employment at Wheelabrator, Fogle was employed by several firms engaged in the foundry business. Although none of these firms manufactured steel shot, during his tenure with these companies he had experience in all the major steps involved in manufacturing steel shot.

1. " *   *   *   I will not enter the employ of any other firm or corporation in the same line of business or directly competing with WHEELABRATOR CORPORATION within one year of the termination of my employment for any reason whatever."

2. La.R.S. 23:921 Provides:
   "No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years." See, National Motor Club of Louisiana, Inc. v. Conque, La.App., 173 So.2d 238 (3rd Cir. 1965), cert. denied, 247 La. 875, 175 So.2d 110 (1965); Aetna Finance Co. v. Adams, La.App., 170 So.2d 740 (1st Cir. 1964), cert. denied, 247 La. 489, 172 So.2d 294 (1965); World-Wide Health Studios, Inc. v. Desmond, La. App., 222 So.2d 517 (2d Cir. 1969); Delta Finance Company of Louisiana v. Graves, La.App., 180 So.2d 85 (2d Cir. 1965). See also, Theatre Time Clock, Inc. v. Stewart, 276 F.Supp. 593 (E.D. La.1967); Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254 (E.D.La.1967); Nalco Chemical Co. v. Hall, 237 F.Supp. 678 (E.D.La.1965), aff'd 347 F.2d 90 (5th Cir. 1965).

3. Plaintiff's original petition sought return of "certain confidential data, writings, drawings and sketches relating to the production of steel shot and grit" but that claim has been abandoned.

During this time he also studied mechanical engineering by correspondence courses.

Upon entering the employ of Wheelabrator in 1957 as an engineer, he signed a contract which reads in part:

"I further agree that I will respect the trade secrets, confidential procedures, data and drawings imparted to me or acquired by me during my employment as the special and exclusive property of WHEELABRATOR CORPORATION and that I will not divulge the same to any other person without the permission of a duly authorized representative of WHEELABRATOR CORPORATION; that I will promptly return all drawings, sketches and written data in my possession upon termination, for any cause, of my employment with WHEELABRATOR CORPORATION; * * *"

Fogle remained in plaintiff's employ until he resigned effective June 1, 1969. During the twelve years at Wheelabrator, he was steadily advanced in position, serving finally as director of product development. His duties included work both in connection with the manufacture of steel shot and grit and the machines in which they are employed.

Fogle left Wheelabrator with the idea of forming his own business. Four months after leaving plaintiff's employ defendant moved to Shreveport, Louisiana, and there in October, 1969, as sole incorporator formed the corporate defendant, Southern Steel Shot, Inc. Fogle is president of that corporation and upon issuance of stock will own fifty per cent.[4] The acknowledged purpose of Southern Steel Shot, Inc., is the manufacture of steel shot for use as abrasives. The operations, however, have not yet passed beyond the planning stage. Fogle has interested three persons to invest small sums and has applied to the Small Business Administration for a loan. Further organizational steps have ceased due to pendency of this suit.

In January, 1970, plaintiff filed its petition for a preliminary and permanent injunction against Fogle and Southern Steel Shot, Inc. The entire case was tried before this Court *in camera*[5] to protect the plaintiff in its contention that the testimony would necessarily disclose its trade secrets. Further, in order to preserve the alleged secrets the records were sealed, to be opened only by the Court or upon Court order.

The alleged secret processes and equipment all relate to the manufacture of steel shot (and to a lesser extent steel grit which defendant claims he does not presently intend to manufacture).[6] The manufacture of steel shot is not a trade secret; several firms engage in this activity. The basic process, as to which knowledge is in the public domain,[7] consists of forcing a stream of pressurized water through a stream of molten steel resulting in the formation of small pellets of steel. These small pellets are used in a manner roughly analogous to the use of sand in the well-known sand blasting process.

Plaintiff does not attempt to restrain defendant from manufacturing steel shot but does attempt to restrain the use or disclosure of specific processes and machinery which it alleges it developed and are trade secrets. These developments are claimed to have involved considerable expense and now give Wheelabrator a competitive advantage over other shot manufacturers.

---

4. For purposes of much of the discussion here, reference is made to Fogle alone as defendant in light of his relationship to and the present status of the corporation. It is generally accepted, however, that a third party who uses trade secrets through a breach of a confidential relationship is likewise liable. *See, generally,* Restatement of Torts § 757; 2 Callman, Unfair Competition, Trademarks and Monopolies, § 51.1 (3d ed. 1968).

5. *See generally*, Annot. 62 A.L.R.2d 509 (1958).

6. Steel grit is generally produced by crushing oversized shot.

7. Defendants introduced into evidence several patents describing the process and variations thereof.

The techniques and machinery relate to the following aspects of the steel shot (and grit) manufacturing process, all of which Fogle has knowledge:

1. The shot removal process
2. The shot drying process
3. The heat treating (hardening and tempering) process
4. The separation process
5. The screening process
6. The packaging process.

Fogle acknowledges that he intends to employ a variation [8] of the shot removal process that Wheelabrator uses and that he does not intend to use the packaging process at all.[9] His testimony with respect to the other processes indicates the exact machinery and processes have not yet been determined. With his innate engineering skill plus his other experience we are convinced that Fogle can and will develop processes of his own especially in light of his relatively limited financial resources. To underline his ability, it should be noted that he has designed and obtained a number of valuable patents while working for plaintiff which have become its property.

With the exception of the packaging process, each of the alleged trade secrets involves modifications or adaptations of commercial equipment available on the open market to the shot manufacturing process.

In determining the protections given trade secrets, this Court's first inquiry, under *Erie*, is of Louisiana law on the subject. Louisiana has no statutory provisions dealing with trade secrets [10] and there is little jurisprudence.[11] That trade secrets are a protectable interest in Louisiana under some circumstances seems clear. Yet, the paucity of Louisiana jurisprudence provides us little guidance here. The Court therefore is called upon to assume the task of making an *Erie*-educated guess as to Louisiana's law of trade secrecy.[12]

The threshold inquiry is to determine whether the claimed processes and machinery are in fact "technical trade secrets." The Restatement definition has been cited and quoted with approval and provides a measure of guidance here.[13]

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a machine or other device or a list of customers."

---

8. "To be subjected to liability one need not use the secret in exactly the form in which he received it, and he may be liable for using it with modifications or improvements effected by his own efforts." Cataphote Corporation v. Hudson, 422 F.2d 1290 (5th Cir. 1970).

9. The packaging process alone of those in question can be detected by analysis of the finished product. Even if that process is held a protectable trade secret, injunction could be issued only on the basis of the possibility or probability of its use or disclosure. *See,* Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 267–271 (E.D.La.1967), for a comprehensive discussion of this point.

10. Brief statutory reference is made to protection of "secret processes, development, or research * * *" with respect to the taking of depositions. La.Code Civ.P.

art. 1452 (1960). The source of this provision is Fed.R.Civ.P. 30(b).

11. There are at present only four cases dealing with the Louisiana law of trade secrecy, Standard Brands, Inc. v. Zumpe, *supra;* Great Lakes Carbon Corp. v. Continental Oil Co., 219 F.Supp. 468 (W.D. La.1963), aff'd 345 F.2d 175 (5th Cir. 1965), cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); Marcann Outdoor, Inc. v. Johnston, La.App., 229 So.2d 419 (3rd Cir. 1969); Brown & Root, Inc. v. LaBauve, 219 F.Supp. 179 (W.D.La.1962). *See,* Barranger, Industrial Trade Secrecy in Louisiana, 43 Tul.L.Rev. 775 (1969), for a general survey of the cases.

12. Bonner v. Williams, 370 F.2d 301 (5th Cir. 1966); 1A J. Moore, Federal Practice 309(2) at 3326 (2d ed. 1953).

13. Restatement of Torts § 757, comment b (1939).

Dealing with the question of the elements of trade secrets and the burden of proof, Judge Hunter summarized: [14]

"Plaintiff has the burden of proving each of the several distinct elements necessary to prove a violation of its trade secrets. The courts in the Fifth Circuit and elsewhere have defined three separate elements that plaintiff must establish in order to prevail on a charge of misappropriation of trade secrets.

"Judge Cecil, in Kinnear-Weed Corp. v. Humble Oil and Refining Company, 150 F.Supp. 143 (Texas Beaumont Division, 1956), affirmed 259 F.2d 398, 5 C.A., 1958, listed the essential elements as follows * * *

"'The essential elements of a cause of action for breach of confidence are

(i) possession by the plaintiff of knowledge or information which is not generally known,

(ii) communication of this knowledge or information by the plaintiff to the defendant under an express or implied agreement limiting its use or disclosure by the defendant, and

(iii) use or disclosure by the defendant of the knowledge or information so obtained in violation of the confidence, to the injury of the plaintiff.'"

█ Clearly, the interest that is entitled to protection must be knowledge or information gained as a result of a confidential relationship. While trade secrets will be protected where a confidential relationship exists even in the absence of a contractual agreement to that effect,[15] a contractual agreement without more does not afford such protection. It must be shown that the processes or machinery here are in fact trade secrets and that access to them was gained in confidence.

The Restatement [16] enumerates the secrecy requirements:

"* * * The subject matter of a trade secret must be secret. Matters of public knowledge or general knowledge in an industry cannot be appointed by one as his secret * * * Substantially a trade secret is known only in the particular business in which it is used. It is not requisite that only the proprietors of the business know it. He may, without losing his protection communicate it to his employees involved in its use. He may likewise communicate it to others pledged to secrecy * * * *Nevertheless a substantial element of secrecy must exist, so that except by use of improper means, there would be difficulty in acquiring the information.*" (Emphasis added.)

A critical element, therefore, is the accessibility of the allegedly secret information to those who are not in a confidential relationship. Protection is afforded only if plaintiff proves the existence of a protectable trade secret.

"The threshold issue in every case is not whether there was a confidential relationship or a breach of contract or some other kind of misappropriation, but whether in fact there was a trade secret to be misappropriated." [17] Wheelabrator has the burden of proving that the processes and machinery it alleges are trade secrets possess "a substantial element of secrecy * * * so that except by use of improper means there would be difficulty in acquiring the information."

Plaintiff stresses that the secretive nature of its operations is based on the employment agreement signed by Fogle in 1957, the physical security precautions

14. Great Lakes Carbon Corporation v. Continental Oil Company, *supra*, 219 F.Supp. at 498.

15. In each of the cases cited at Note 11 only in the *Zumpe* case was there a contractual agreement. *See, generally*, Annot. 30 ALR3d 631 (1970).

16. Restatement of Torts § 757, comment b (1939).

17. Callman, Unfair Competition, Trademarks and Monopolies § 51.1 at 348 (3d ed. 1968).

taken by plaintiff at its plants, and the issuance of notices indicating limited access to the shotting plant to specified personnel.

Wheelabrator argues that the employment agreement is a positive acknowledgment by Fogle that its shotting processes were considered secret. While the agreement must be given some weight in the determination of the existence of a confidential relationship, it is not conclusive of the issue. It must be noted that, "[i]t is the function of the court * * not the employee to determine whether a trade secret so called and considered by the employee is actually such." [18] Fogle denies that the processes are trade secrets. Certainly the disparity in bargaining position and lack of actual knowledge upon execution of the agreement limits its weight as indicating an acknowledgment of the secret nature of the business.

Plaintiff introduced evidence relating to the fencing of the manufacturing facilities and the location of guard houses at the entrances. No distinction, however, was made between the shot plant and other manufacturing facilities within the fenced area. The shotting plant was afforded no greater security than the admittedly non-secret facilities. The location of the guard houses also indicates only a general security arrangement. They were located at the general entrances providing no greater security for the shotting plant than other facilities. Moreover, there was uncontroverted testimony that often these guard houses were unmanned. These precautions indicate a security arrangement "only to the extent that many manufacturers are accustomed to exclude the general public from an inspection of their methods." [19]

On June 11 and June 18 of 1962, Wheelabrator issued two notices which stated that admittance to the shot plant would be restricted to authorized personnel. Within only a few weeks, however, the stated policy in the notices was abandoned due to resulting administrative difficulties. No further action was shown to have been taken with regard to admission restrictions to the shot plant. Many of the processes and machinery now claimed as secret were developed subsequent to the failure of this restricted admission policy.

Further evidence of the lack of security that obtained is reflected in the apparent routineness that customers, potential customers, independent contractors, and repairmen were allowed admission to the plant. Defendant's uncontroverted testimony indicated that many of the people that were allowed to tour the plant were engineers and professionals, some of whom the defendant personally conducted in descriptive tours. Almost all, if not all, of the alleged secret processes were visible, and only a few interior modifications to machinery were not observable. Significantly there was no evidence of contractual relationships between those touring the plant and Wheelabrator. Nor was there evidence of admonitions or notice to the independent contractors and repairmen as to the allegedly confidential nature of the operations.

Finally, in its 1965 annual report plaintiff published a photograph of the heat treating equipment it now alleges is secret. It would have the Court find that this was not a public disclosure because the publication was not directed to a technical audience. Notwithstanding the probable interest in such a publication of competitors or potential competitors who could carefully scrutinize the photograph and ascertain alleged trade secrets, the mere publication evidences a substantial lack of secretive intent.

The Fifth Circuit has recently addressed itself to the secrecy requirement in noting: [20]

18. 2 Callman, *supra*, § 53.2(a) at 384.

19. Excelsior Steel Furnace Co. v. Williamson Heater Co., 269 F. 614 (6th Cir. 1920), *Cf.* Callman, supra, § 53.3 at 392.

20. E. I. duPont de Nemours & Co., Inc. v. Christopher, 431 F.2d 1012 (5th Cir., July 20, 1970).

"To obtain knowledge of a process without spending the time and money to discover it is *improper unless the holder voluntarily discloses it or fails to take reasonable precautions to ensure its secrecy*." ("improper" emphasized by Court, other emphasis added.)

██ Jurisprudence which is aptly applied to the factual findings here is summarized by Cavitch:[21]

"Obviously, if the alleged secret subject matter is in fact generally known or in commerce no secrecy may be said to prevail [Footnotes omitted]. *Such general knowledge will be deemed to exist not only where it is actually possessed by outside persons but also in situations in which the information, process, or device is fully and easily obtainable * * *"* (Emphasis added.)

██ In view of the security arrangements and public disclosure indicated above, the Court finds that the alleged trade secrets lack the first essential element for trade secrecy—namely secrecy itself. Recognizing that absolute secrecy is not required, a substantial element of secrecy must exist for processes and machinery not under patent to be protected against use or disclosure even by a former employee. Assuming, without deciding, that Wheelabrator had the intent to keep the processes and machinery secret, that intent will be disregarded where absence of evidence of proper precautions against disclosure is found. Wheelabrator's lack of precaution renders it undeserving of the equitable protection it now seeks. To limit a man in the exercise of his knowledge there must be a strong showing that the knowledge was gained in confidence. The plaintiff has failed to carry that burden. The injunction is denied.

A proper decree should be presented.

21. 9 Cavitch, Business Organization 232.01(1) at 2025 (1969).