245 So.2d 511 (1971)
Russell PELTIER, Plaintiff-Appellee,
v.
Marcel P. HEBERT d/b/a Hebert's Creamery, Defendant-Appellant.
No. 3341.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1971.
Earl H. Willis, of Willis & Hardy, St. Martinville, for defendant-appellant.
*512 Ronald E. Dauterive and J. Minos Simon, Lafayette, for plaintiff-appellee.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff was employed by defendant from November 1, 1961 through December 15, 1965 as a milk route deliveryman or salesman and sued defendant in the district court for a money judgment as a result of defendant's having withheld a certain percentage of plaintiff's gross monthly commissions and also for commissions due on sales transacted between December 1 and December 15, 1965. Defendant answered, denying that any monies were due plaintiff because a written contract entered into between the parties had been breached by the plaintiff thereby automatically causing all funds deposited or withheld by defendant to be forfeited.
After a trial on the merits the district judge awarded plaintiff the sum of $1,075.34. From this adverse judgment defendant has appealed suspensively to this court. The issues are:
1) Did the employment contract between the parties contain any provisions for the forfeiture of commissions withheld by the defendant?
2) Are the restrictive employment and forfeiture provisions of the contract prohibited by the provisions of LSA-R.S. 23:921 (as amended by Act 104 of 1962)?
3) Did the restrictive employment contract fall within the exceptions created by Act 104 of 1962?
The facts show that on December 1, 1961 plaintiff became employed by the defendant for the operation of a milk route in the vicinity of the Cities of Lafayette and St. Martinville. His compensation was set at 13½ per cent of the sales of milk and at other percentages on other dairy products. The conditions of the employment were reduced to writing and signed by the parties. One of the conditions was that the employer retain five per cent of the commissions earned by plaintiff until the amount retained reached the sum of $1,000.00. Plaintiff was also required to deposit with the defendant the amount of $500.00 in cash. These amounts were to insure plaintiff's faithful performance of his duties under the contract. The parties further agreed that the plaintiff would not go to work for any other milk distributor in the area served by the defendant within a period of one year after the termination of his employment. A provision for the forfeiture of certain benefits was also agreed to. New contracts were entered into on one or more occasions during the time that plaintiff continued in his employment. The last contract, containing the aforementioned restrictive covenant, was entered into on January 16, 1963, evidently to encompass the provisions of the 1962 amendment to LSA-R.S. 23:921 which permitted such agreements in cases where the employee received special training for the performance of the duties of his employment or when the employer undergoes expenses in advertising his business. It did not contain any provisions for liquidated damages in the event of its breach.
On December 15, 1965, plaintiff left defendant's employment and shortly thereafter entered the employment of a competitor, Borden's, for the operation of a milk route in or about the vicinity of his former route. However, he had an entirely new list of customers with Borden's, and there was no suggestion that plaintiff solicited or secured for his new employer, any of the customers which he formerly served for defendant.
Even though requested to do so, the defendant did not refund the plaintiff's $500.00 deposit nor the five percent portion of his commissions and consequently this suit followed. There is no dispute that the retained commissions amount to $443.00, which amount added to the $500.00 deposited by plaintiff amounts to the sum of $993.00 *513 and that that amount was held by the defendant. The facts also showed that the amount of commissions earned by plaintiff during the two weeks from December 1 to December 15, 1965 amounted to the sum of $82.34.
In granting judgment to plaintiff the trial judge concluded that the defendant was liable for these sums to the plaintiff for either of two reasons:
1) That the contract did not contain any provisions for the forfeiture of the amounts withheld;
2) Even if this were not so, the restrictive employment and forfeiture provisions of the contract are not enforceable under the provisions of LSA-R.S. 23:921.
We adhere to both conclusions of the trial court.
The restrictive employment agreement and the forfeiture provisions are contained in Paragraph 7 of the contract. They are as follows:
"7. RESTRICTIVE COVENANT:
(A) The parties recognized the fact that a milk route and the customers on said route are a valuable property right. In consideration thereof, and a condition without which this contract would not have been agreed, the salesman obligates himself that should he terminate this contract and/or for any reason leave the employ of the owner herein, then, and in that event, said salesman will not go to work for any other milk distributor in the area served by the owner, for a period of one (1) year following the termination of this contract, or his leaving the employ of the owner.
(B) To insure the faithful performance of this agreement, the salesman agrees to deposit $500 with the owner and also does hereby authorize the owner to withhold five per cent of all commissions earned by him each month, until the sum of $1,000 has been accumulated, a total of $1,500.
(C) One year after the termination of employment of the salesman, the owner will deliver the sums so deposited and withheld to the salesman, his heirs or assigns.
(D) In addition, should the salesman violate this restrictive covenant, he automatically forfeits any and all benefits from the owner, other than those which might be due from commission. Example: Should the owner establish a profit sharing plan or other such arrangement, whereby all moneys in the fund originate from sources other than the salesman's commission." (Emphasis added.)
We quote with approval the trial judge in his terse but correct analysis of the forfeiture argument as follows:
"* * * The only forfeiture provided for in the agreement, and contained in Paragraph 7(d), applies to `all benefits from the owner, other than those which might be due from commission'.
"Clearly, the $500.00 in cash that plaintiff has on deposit with the defendant is not a `benefit from the owner'. Hence, the forfeiture provision cannot apply to it.
"It is likewise plain that the balance of $443.00, being due from commission, is also exempt from forfeiture. Not only is it not a `benefit from the owner', but it is `due from commission' and is specifically exempt.
"The example given in the provision clearly indicates that `benefits from the owner' cannot be interpreted to include plaintiff's own money and what is due him from commission. * * *"
Concerning the legality of the restrictive employment provision of the contract, and the applicability of LSA-R.S. 23:921 to it, we quote the statute:
"No employer shall require or direct any employee to enter into any contract *514 whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2." (The proviso, which we italicized was added by the 1962 amendment.)
We see then that prior to the 1962 amendment, restrictive employment contracts of the nature involved in this case were null and unenforceable, but with the proviso added by the 1962 amendment, such contracts became permissible where the employer incurs an expense in the training of the employee or in the advertisement of the business that the employer is engaged in.
In this case, the record shows that when plaintiff went to work for defendant in 1961 he took over the milk route of defendant's employee, Albert Olivier, who had been promoted by defendant to the job of supervisor. During the first week of plaintiff's employment, he rode with Olivier on the route to learn the customers and to deliver the dairy products. During the second week plaintiff began to drive the truck with Olivier accompanying him and by the time that the third week's employment was completed, plaintiff was primarily on his own. During the indoctrination period, plaintiff learned the routine of his job, and the method of keeping his records of deliveries as required by the defendant. For a few months thereafter Olivier, two or three times a month, accompanied plaintiff on the route in his capacity as supervisor. We gather that this procedure was followed whenever a new route man was employed by defendant. The defendant stated that he engaged in some advertising as part of his business, but the record is silent as to the extent thereof. He had no special advertising fund nor did he advertise special or individual employees. Neither did he maintain a special fund for the training of his employees.
From the above, we conclude that defendant's showing of training and advertising costs were minimal, being simply the normal costs of administration and advertising incurred by any business, and none of these costs were shown to have been incurred after the January 16, 1963 contract was executed.
This court, in the case of National Motor Club of Louisiana, Inc. v. Conque, 173 So. 2d 238, writs denied, 247 La. 875, 175 So.2d 110 (1965) considered the question of training and advertising costs experienced by an employer in connection with the 1962 amendment referred to hereinabove, and we stated therein:
"We cannot hold that these normal costs of running a business are the sort of training and advertising expenses which validate noncompetitive agreements under the 1962 amendment, invalid otherwise under the basic provisions of LSA-R.S. 23:921 and under the public policy of Louisiana. If we do so, then in effect the basic provisions of the statute have been judicially repealed, for then all noncompetitive agreements exacted from employees may be held valid, whether or not the employer has incurred any special expenses in training the employee or advertising the employee's connection with the employer's businessthe special circumstances alone intended by the 1962 amendment as validating such non-competitive *515 agreements (and then only if entered into for a statutorily-limited duration and applying only to a statutorily-limited area * * *)."
A reading of the National Motor Club case, supra, leads us to conclude that the training and advertising costs of the employer in that case were more substantial than were those of the defendant in the case at bar, and further it is obvious that there was a greater need for training in the former case in view of the nature of the employment, i. e. selling memberships to automobile owners which provided insurance according to a limited schedule against accidental loss and for hospital expenses resulting from the use of his automobile during the policy year.
We conclude that the minimal expenses incurred by the defendant as referred to hereinabove are, in fact, insignificant and of such a nature so as to deprive him of the benefits of the 1962 amendment, accordingly, the trial judge was correct when he ruled that the restrictive employment provisions of the contract in question are non-enforceable under the provision of LSA-R.S. 23:921.
We again recognize that we are to some extent conflicting with the ruling of our confreres of the First Circuit in the case of Aetna Finance Co. v. Adams, 170 So.2d 740. That case in essence, held that general administrative and advertising expenses suffice under the 1962 amendment to validate a non-competitive agreement obtained from an employee, but we adhere to the contrary reasoning on the subject contained in the National Motor Club case, supra.
Because of our conclusions herein, we do not deem it necessary to pass upon whether or not the January 16, 1963 contract between the parties was a novation under LSA-C.C. 2185 as suggested by the trial court.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant's cost.
Affirmed.