524 So.2d 750 (1988)
Paul Cleveland LANDRY, Plaintiff-Appellee,
v.
WILLIAM B. REILY & COMPANY, INC. on its own behalf and on behalf of Standard Coffee Service Company, a division of William B. Reily, American Arbitration Association and Mac Allyn J. Achee, Defendants-Appellants.
No. 87-11.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
*751 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Suzanne M. Jones, Lafayette, for plaintiff-appellee.
Walker, Bordelon, Hamlin & Theriot, Michael T. Tusa, Jr., New Orleans, MacAllyn J. Achee, Baton Rouge, for defendants-appellants.
Before GUIDRY, YELVERTON and SWIFT,[*] JJ.
G. WILLIAM SWIFT, Judge Pro Tem.
Plaintiff, Paul C. Landry, began employment with Standard Coffee Service Company, a division of William B. Reily & Company, Inc. (Standard), as a coffee route salesman about October 12, 1970. After some initial on-the-job training, he was assigned a territory which included St. Landry Parish and several others in southwest Louisiana. Plaintiff's job duties required that he sell coffee and related supplies to customers of Standard within his assigned territory. He was paid a commission on his sales and collections.
During the fifteen years that plaintiff was employed by Standard, he was required to execute various employment agreements regulating the terms and conditions of the employment. Each of these contained non-competition clauses upon termination of such employment.
About April 18, 1984, plaintiff and several employees were presented with another non-solicitation agreement (the one involved in this case) and instructed to take it home to discuss it with their spouses and an attorney if they chose to do so. The regional manager, Butch Diaz, and the sales supervisor in charge of the Lafayette area, John Melancon, met with the employees to discuss any questions pertaining to the new agreement. It prohibited Standard's employees from soliciting or selling coffee and supplies to any customer of Standard with whom they had dealings while so employed for a period of two years after leaving their jobs. The agreement also stated this was not a condition of the employment and the salesmen would not be adversely affected in their company relations should they decline to sign the agreement or at any time decide against renewal. As consideration Standard agreed to pay the employee $500.00 when the contract was signed and an additional $250.00 at three month intervals from its date if the employee chose to extend the two year calendar period. After discussing the agreement with his wife, plaintiff signed the agreement and was paid $500.00. The contract was renewed in 1984 and 1985 and in accordance therewith plaintiff received *752 approximately $1,700.00 while employed with Standard.
The April 1984 agreement also provided for final and binding arbitration at the request of either party in writing. In such case the arbitrator would have the right to enter cease and desist orders and damage awards, including liquidated damages of $1,000.00 per machine per account, and any other losses that could be proven.
On December 12, 1985, plaintiff's employment was terminated after an audit disclosed shortages of approximately $3,100.00. Plaintiff testified that the shortages resulted from a robbery that occurred while he and his wife were on vacation.
Thereafter, plaintiff formed the Acadian Coffee Services, Inc., and engaged in the business of selling coffee and related supplies in the Lafayette area. Standard was informed that the plaintiff was soliciting its former customers in violation of the non-solicitation agreement and instituted arbitration proceedings with the American Arbitration Association.
Subsequently, plaintiff filed suit seeking declaratory relief, damages and an injunction to prohibit arbitration of the dispute. Standard answered and asserted a reconventional demand to compel plaintiff to arbitrate.
A hearing was held on Standard's demand to compel arbitration and on plaintiff's request for a preliminary injunction. The district court granted the requested preliminary injunction pending a trial on the merits and Standard has appealed devolutively. We affirm.
Appellant Standard contends the district court erred in granting the preliminary injunction stopping the arbitration, because the agreement for arbitration was proved and the plaintiff has not established that he will suffer irreparable injury if ordered to comply therewith.
On the other hand, appellee Landry contends no arbitration agreement exists, because the document relied on is void ab initio as being contrary to public policy and LSA-R.S. 23:921.
As stated in Price v. State, Dept. of Pub. Saf., Lic. Con. & D.I. Div., 325 So.2d 759 (La.App. 1 Cir.1976):
"In order to obtain a preliminary injunction, a plaintiff must make a prima facie showing that he would prevail on the merits of the case, and that he will suffer irreparable injury unless the injunction issues." (Citations omitted.)
The preliminary injunction in this instance simply preserved the status quo pending a full trial on the merits. If Landry was forced to proceed with arbitration and lost prior to a determination of the validity of the agreement on the merits, it would undoubtedly affect his business and reputation adversely and his damages may not be measured by usual pecuniary standards. We are therefore convinced that irreparable injury could result if the preliminary injunction had not been granted. W.E. Parks Lumber Company, Inc. v. Ronald A. Coco, Inc., 297 So.2d 925 (La. App. 1 Cir.1974), writ denied, 302 So.2d 23 (La.1974); Waters v. Karst, 235 So.2d 222 (La.App. 3 Cir.1970).
The next question is whether the plaintiff has made a prima facie showing that there is no valid arbitration agreement existing between the parties.
The Louisiana Arbitration Law, LSA-R.S. 9:4201 et seq., recognizes the validity of arbitration agreements, "save on such grounds as exist at law or in equity for the revocation of any contract." And it is favored in our jurisprudence to resolve contract disputes. State, Div. of Admin. v. Algernon Blair, 415 So.2d 612 (La.App. 3 Cir.1982). The only grounds for judicial inquiry under the statute are (1) whether a valid arbitration agreement exists, and (2) whether it has been complied with. Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974); LSA-R.S. 9:4203.
Although arbitration is favored in Louisiana, non-competition agreements are disfavored and are deemed contrary to public policy, except under the circumstances outlined in LSA-R.S. 23:921 relating to the employer's expenditure of substantial amounts in training the employee or in *753 advertising the business. Orkin Exterminating Company v. Foti, 287 So.2d 569 (La.App. 3 Cir.1973), aff'd 302 So.2d 593 (La.1974); National Motor Club of Louisiana, Inc. v. Conque, 173 So.2d 238 (La. App. 3 Cir.1965), writ denied, 247 La. 875, 175 So.2d 110 (1975).
LSA-R.S. 23:921 provides that:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years."
Plaintiff was not sent to any school for special training. Also, no money was spent during the fifteen years he was employed for advertising aimed at promoting him within his territory of Lafayette. The training he did receive was mainly on the job and consisted of an orientation tour whereby one of the supervisors drove with him the first couple of weeks in order to acquaint him with the territory.
In the Foti case the Supreme Court said:
"Likewise, Foti's on-the-job training through his experience, through the supervisory assistance initially received by him, and through his access to Orkin training manuals and technical bulletins, constitute usual and ordinary expenses of employee-utilization. They are not expenses for specialized training of the nature that could validate a non-competition agreement."
In Chalmers Corporation v. Carnell, 479 So.2d 990 (La.App. 3 Cir.1985), this court refused to enforce a non-competition agreement where the employer expended approximately $550.00 on various seminars and company meetings attended by the employee and where the employee received on-the-job training.
Recently a similar, if not the same, non-competition agreement was held to be invalid as against public policy in Matter of Standard Coffee Service Co., 499 So.2d 1314 (La.App. 4 Cir.1986), writ denied, 501 So.2d 232 (La.1987). The court also declined to find that Standard's expenditures on their employee were sufficient to bring the case within the training and advertising exception of LSA-R.S. 23:921.
From our review of the record at this stage we likewise find that the normal on-the-job training of the plaintiff was not sufficient to apply the Section 921 exception and the purported arbitration agreement appears to be null and void as against public policy and LSA-R.S. 23:921. Certainly, the plaintiff has made a prima facie showing to this effect and the preliminary injunction was properly issued pending trial on the merits.
For the foregoing reasons, the district court's judgment granting the preliminary injunction will be affirmed and the case is remanded to that court for further proceedings in accordance with these views and the law. All costs are taxed to the defendant-appellant.
AFFIRMED AND REMANDED.
NOTES
[*] Judge G. William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.